Joan Heffington
7145 Blueberry Lane
Derby, Kansas  67037
Telephone:  (316) 788-0901
Facsimile:  (316) 788-7990

FILED
U.S. DISTRICT COURT
DISTRICT OF KANSAS

'11  MAY 17  P12 :18

CLERK. U.S. DISTRICT COURT
BY: _____ DEPUTY CLERK
AT WICHITA, KS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Joan Heffington, Individually, *pro se*          )
and On Behalf of Minor Son, G.H.                 )
          Plaintiffs,                           )
                                                 )
                                                 )
        vs.                                     )     Case No.  11-2276-CM-KGG
                                                 )
Derby Unified School District (USD) 260,         )
Craig Wilford, Superintendant,                   )
Adam DeVault,                                    )
Jeff Griffith,                                   )
Griffith & Griffith,                             )
          Defendants.                           )
_____        )

## A.  COMPLAINT

COMES NOW the plaintiffs, Joan Heffington, individually, *pro se*, and on behalf of her minor son,

G. H., and files this complaint against the defendants as follows:

## B.  PARTIES

1.    Plaintiff, Joan Heffington, individually and on behalf of her minor son, G.H., is an individual

representing herself *pro se* with residence located at 7145 Blueberry Lane, Derby, Kansas  67037.

Plaintiff, Joan Heffington, is hereinafter referred to as the same or "Mrs. Heffington."

2.    Plaintiff's son, G.H., is the 17-year old minor son of plaintiff, Joan Heffington and her

husband, Mark Heffington (deceased).  Plaintiff's son is hereinafter referred to as "G. H."

3.    Defendant, Derby Unified School District (USD) 260, is a school district comprised of a

superintendent, board of education members, and various local and state actors and entities engaged in

authoritative control and governance of the school district, as well as teachers, administrators and other

school officials in the Derby school system.  Defendant, Derby Unified School District (USD) 260, is a

corporate entity with principle offices located at 120 E. Washington, Derby, Kansas 67037. Defendant

Derby Unified School District (USD) 260 may be served by and through their administrative officer, Vicki

Frazier, 120 E. Washington, Derby, Kansas 67037. Defendant Derby Unified School District (USD) 260

is hereinafter referred to as the same, the "Derby school system," "the school," "the school system,"

"Derby USD 260," or "USD 260."

    4.    Defendant, Craig Wilford, is superintendent of Derby Unified School District (USD) 260, and is

engaged in authoritative control and governance of the school district, as well as teachers, administrators

and other school officials in the Derby school system. Defendant, Supt. Craig Wilford, is an individual

with principle offices located at Derby Unified School District (USD) 260, 120 E. Washington, Derby,

Kansas 67037. Defendant Supt. Craig Wilford may be served by and through himself at his principle place

of business at 120 E. Washington , Derby, Kansas 67037. Defendant Supt. Craig Wilford is hereinafter

referred to as the same, "Supt. Wilford," "Mr. Wilford" or "administration."

    5.    Defendant, Adam DeVault, is a band instructor and teacher employed by the Derby Unified

School District (USD) 260, and is engaged in the teaching and instructing of band students at Derby Senior

High School. Defendant Adam DeVault, is an individual with principle office located at 920 N. Rock

Road, Derby, Kansas 67037. Defendant Adam DeVault may be served by and through himself at his place

of business: Derby Senior High School, 920 N. Rock Road, Derby, Kansas 67037. Defendant Adam

DeVault is hereinafter referred to as the same, "band teacher Mr. DeVault" or "Mr. DeVault."

    6.    Defendant, Jeff Griffith, is an attorney that has represented the Derby Unified School District

(USD) 260 for years. Defendant Attorney Jeff Griffith, has his principle place of business at 111 S.

Baltimore, Derby, Kansas 67037. Defendant Attorney Jeff Griffith, may be served by and through himself

at his principle place of business: Griffith & Griffith, 111 S. Baltimore, Derby, Kansas 67037. Defendant,

Attorney Jeff Griffith, is hereinafter referred to as the same, "Mr. Griffith" or "Griffith & Griffith."

    7.    Defendant, Griffith & Griffith, is a law office and/or firm that employs attorney Jeff Griffith and

has represented defendant Derby Unified School District (USD 260) for many years. Defendant Griffith &

Griffith is a sole proprietorship business with principle offices located at 111 S. Baltimore, Derby, Kansas 67037. Defendant Griffith & Griffith, may be served by and through William Griffith and/or defendant Attorney Jeff Griffith, at his principle place of business: Griffith & Griffith, 111 S. Baltimore, Derby, Kansas 67037. Defendant Griffith & Griffith, is hereinafter referred to as the same, "Jeff Griffith," "Mr. Griffith" or "law office."

## C. FACTS PERTAINING TO THE PARTIES

8. Plaintiff Joan E. Heffington is a United States citizen and a resident of the state of Kansas. She is the natural mother of G. H. He is the third of four children in the Heffington family.

9. G. H., is the 17-year old minor son of Joan Heffington and her husband, Mark, who passed away in March, 2006. G. H. is a United States citizen and a resident of the state of Kansas.

10. Joan Heffington and her sons, including G. H., reside at 7145 Blueberry Lane, Derby, Kansas, which is located in Sedgwick County, Kansas. They have lived there for almost 17 years.

11. G. H. has attended school in the Derby school system since he was in kindergarten.

12. Joan Heffington is unemployed, but does volunteer work out of her home. She is the C.E.O. and founder (in 2003) of the Association for Honest Attorneys (A.H.A!), a non-profit organization dedicated to discouraging litigation, improving the legal system and seeking "justice for *all*." The A.H.A! is well-known on the local, state and national level and its quarterly newsletter/update reaches millions.

13. Defendant Derby USD 260 is comprised of teachers, school administrators, school officials, government actors and/or entities of the United States, engaged in the business of governing the school system. The defendants have had full knowledge of the pattern and history in this matter for years.

14. Defendant Superintendant Craig Wilford is engaged in the business of supervising the Derby Unified School District (USD) 260 school system. He has been the supertintendent of USD 260 for approximately the past five years. Prior to this time, Mr. Wilford was the principal of the Derby Sixth Grade Center for several years where plaintiff's son, G.H., had also attended.

15. Defendant Adam DeVault is engaged in the business of teaching and instructing marching

3.

band to USD 260 students at Derby Senior High School. The Derby Senior High School marching band has been one of the top-rated high school bands in the state of Kansas for several years.

16. Defendant Jeff Griffith is an attorney who has represented Derby Unified School District (USD) 260 for many years. He was also a classmate of plaintiff Joan Heffington when they both graduated from Derby Senior High School in 1973, and they attended the same college classes together in administration of justice at Wichita State University.

## D. FACTS PERTAINING TO THE CASE

17. Joan Heffington is the natural mother of G. H., who was born on September 12, 1993 to Mark and Joan Heffington. G. H. is the third of four children in the Heffington family.

18. Joan Heffington experienced problems during the birth of G.H., which may have contributed to his diagnosis of a mild case of Asperger's Syndrome at the age of 10.

19. G.H. is very intelligent but has had difficulty with math and other subjects due to a processing disorder resulting from his Asperger's Syndrome. Mr. and Mrs. Heffington went to school with him for many weeks when he was in the 4th grade to help him pass math.

20. It was discovered then that G.H. needed reminders in class by teachers and aids to assist him in his work, especially math, so that he could pass his classes. G.H. was put on a 504 plan for this in 2004.

21. To help him stay focused, his father helped G.H. four nights a week after school to practice playing the trombone. G.H. became one of the top trombone players in band in the 5th grade.

22. In 6th grade, the school curriculum changed and GH could not take both band and P.E. Mr. Heffington wanted GH to be in sports like his younger brother, so G.H. enrolled in P.E. instead.

23. Mr. Heffington died unexpectedly of a massive heart attack in March, 2006. Mrs. Heffington wanted G. H. to continue his trombone to help him stay focused because of his Asperger's Syndrome, and because it helped his self-esteem to be in band.

24. G.H. performed well and was allowed to continue playing in band. However, he became very frustrated on several occasions when the teacher gave him a lower chair, even though he knew he played

4.

better than two other boys.

25. His 7th grade band teacher allowed G.H. to be bullied for months by another student. When he couldn't take it any more, he elbowed him and the boy fell off his chair. It was G.H. who was disciplined.

26. Another time, G.H. was scolded and blamed by a different middle school teacher in front of other students in class for something he didn't do. He also incurred a leg injury during track that was left unattended and bleeding by the school coaches until Mrs. Heffington arrived and saw it.

27. The Derby school system has a "Zero Tolerance on Bullying" policy by students toward other students. But there is nothing to protect students who are bullied by teachers.

28. Mrs. Heffington spoke out at several B.O.E. meetings about the injustices toward children in our school system and had even run for the Derby B.O.E. in 2005. However, her comments and those she made in the A.H.A! newsletter were continually ignored by the school system.

29. In March, 2008, G. H. tried out for 9th grade marching band in high school. He didn't quite make it, which Mrs. Heffington later learned was due to a less than favorable rating by his middle school band teacher.

30. After a second review, he was admitted into the high school marching band. At that time, if a student made marching band in the 9th grade, he was automatically in for the rest of his high school years.

31. G.H. performed well in marching band, but because of his processing disorder, he needed reminders at times to make sure what clothing he needed to wear, what to bring to events, etc. Mrs. Heffington coordinated with band teacher Mr. DeVault's assistant by e-mail on these issues prior to events.

32. For several months during the 2008-2009 school year, a part was broken on G.H.'s trombone. Mr. DeVault did not try to help him correct it, but instead, used it as an excuse to downgrade him.

33. Mr. DeVault also found reasons to drop G.H. to a lower chair due to his processing disorder, not because he didn't play well. G.H. became further distressed over Mr. DeVault's actions toward him.

34. In May, 2009, Mr. Devault notified band students and parents that 240 students were interested in playing in marching band in the fall, and with only 210 openings, he needed to have tryouts. G.H.

told his mother that Mr. DeVault said if anyone didn't show up, they would be automatically cut.

35. On May 18, 2009, Mr. DeVault held marching band tryouts, but only 200 students showed up. Mrs. Heffington was there to watch with other parents, and noticed Mr. DeVault stare up at her several times. G.H. gave a flawless performance, and she was sure that he had made it.

36. On or about May 23, 2009, GH told his mother that he had been cut from marching band. Mrs. Heffington found out later that he was the only freshman that had been cut, and was told by another mother that about 10 more students who did not come to the tryouts had been added back in by Mr. DeVault.

37. Mrs. Heffington contacted the school system's 504 coordinator about Mr. DeVault discriminating against G. H. and cutting him from band. He said he would look into it and have Mr. DeVault call her.

38. In a phone conversation on June 3, 2009, Mr. DeVault threatened Mrs. Heffington that if she got G. H. back into marching band, he would flunk him.

39. It was at this point that Mrs. Heffington realized that Mr. DeVault had been devising a plan to try and eliminate G. H. from his perfect "one-rated" band for good.

40. Mr. DeVault didn't want to have to bother with giving G.H. the reminders he needed under his 504-plan to succeed, and this was supported by the school system, Attorney Jeff Griffith and his law office.

41. On October 13, 2009, Mrs. Heffington filed a complaint with the Office of Civil Rights (OCR) to try and resolve the situation, but it was dismissed. She timely filed an appeal on June 7, 2010.

42. Mrs. Heffington waited since June, 2010 for the OCR to respond, and contacted their office on numerous occasions. After almost a year, they have still failed to respond.

43. G.H. was depressed over not getting into marching band, and other band members were stunned that he didn't make it. In the fall of 2009, they told G.H. they missed him and wished he was back in.

44. G.H.'s self-esteem dropped, his grades went down further, and he eventually lost his friends in band. He eventually had to drop other electives because he continued to struggle in math, especially.

45. Mrs. Heffington had been getting tutoring help for G.H. for several years to help him pass math

and tried to stay on top of his grades on line. She did not want to go to school with him again because she knew at the high school level, it would be embarrassing.

46. G.H.'s self-esteem was already low due to the school's failure to give him adequate assistance to pass (especially) math classes under his 504 plan. They had told Mrs. Heffington that an aid would cost the school money, and they had arrogantly refused to comply with federal law and provide this to G.H.

47. G.H. had flunked Algebra for three years due to the school system's lack of giving him proper assistance under his 504. He had to take both Algebra and Geometry at the same time his junior year.

48. In early April, 2011, G.H. came home from school and told his mother: "I can't pass math, I will never be able to, and I'm just going to work at the train store all my life." He had given up.

49. G.H. had not been able to sleep well at night worrying, and some of his teachers had complained that he was falling asleep in their classes.

50. Seeing how severely distressed G. H. was caused Mrs. Heffington to feel the same. She decided that if the school system wasn't going to do their job, she would have to.

51. Mrs. Heffington told G.H. that she was going to start coming to school again so she could learn the math and help him pass. The school had verified that G. H. only had .5 credits in math and needed 3 to graduate, and she knew that he might not graduate with his class in 2012.

52. The first day she came to school and a remark was made, G.H. was so upset that he ran out of the classroom down the hall. Mrs. Heffington had to chase him down and bring him back to class.

53. Every day for two weeks, Mrs. Heffington went to G. H.'s Algebra and Geometry classes so she could learn the math and help him get the assignments done and turned in on time.

54. G.H. was getting used to it, and his grades began to improve in both Algebra and Geometry.

55. When Supt. Craig Wilford found out Mrs. Heffington was coming every day, the school called and told her that she couldn't come any more because "administration" hadn't known about it. Fearing a lawsuit, they started giving G. H. extra help in his math classes.

56. Mrs. Heffington was not aware that the school provided other forms of assistance under 504

plans until one of the counselors told her in April, 2011 that they give 504 students extra help (using aids) during tests "all the time." Another teacher told her that 504 students are usually given labs, but none of this had ever been offered by the school system to help G.H. at any time in the past seven years.

57.  Since Derby is a small town outside of Wichita, the defendants were well aware that Mrs. Heffington operated a non-profit organization called the A.H.A!. They were aware of A.H.A! activities to try and discourage litigation, but that they sometimes helped (usually poor) people file lawsuits who are taken advantage of by lawyers, judges, courts, cities, etc.

58.  The defendants knew of the retaliation that had been continued and ongoing toward Mrs. Heffington and her family because she operated the A.H.A!. They were participating in this effort by intentionally inflicting emotional distress on her and her sons, including G. H., so they would fail.

59.  In 2002, G. H.'s older brother had reported that the Derby Middle School was going to be shot up by a student. The student was arrested at the school the next day, but G. H.'s older brother was falsely charged six months later with filing a false alarm. The case dragged out over a year and the school system, Jeff Griffith and his law office made sure it was all kept quiet and let Mrs. Heffington's son suffer. A few years later, Derby USD 260 honored the would-be shooter as "Student of the Year."

60.  There were other incidents in the school system directed at G. H. and plaintiff's two other sons. In late May 2008, G. H.'s younger brother was struck in the head by a Derby Middle School teacher. The school system did nothing except ask the teacher to write a note of apology to him. She wrote a note, but never apologized.

61.  When Mrs. Heffington told a friend about this, she exclaimed, "So just because your last name is Heffington, this gives them the right to do whatever they want to you???"

62.  In the fall of 2008, G.H.'s younger brother got into a scuffle in the school's locker room. He was struck six times before he hit back and no one was hurt, but he was suspended for three days. Mrs. Heffington begged the school not to arrest him and give him a police record, but they did anyway.

63.  All of the defendants knew Mrs. Heffington had been denied legal representation for years,

because she was C.E.O. of the A.H.A!. They knew she had little money since her husband died, so they all figured they could do whatever they wanted to her and her children and get away with it.

64. The Derby USD 260 Mission Statement is **"for all students to reach their full potential… by ensuring them an exceptional, progressive education in a safe and supportive environment."** For G. H. and his siblings, nothing could be further from the truth.

65. The A.H.A! had received past complaints about the Derby school system, including a 6th grade boy that was arrested for poking a girl in the bottom with a pencil and a middle school girl arrested for drawing a heart on a boy's neck with a red pen. Both students were arrested for "assault."

66. The first complaint ever received by the A.H.A! against an attorney was against defendant Attorney Jeff Griffith, and they have continued to receive complaints against him. The A.H.A! website is well-known for its list of "Lawyers to Avoid," and Jeff Griffith has been on it for years.

67. In one incident in 2008, Attorney Jeff Griffith dragged a small claims matter out for two years causing a man to have a heart attack. His wife came to the A.H.A! for help to keep it from dragging out further. She fired Jeff Griffith, and the A.H.A! helped them resolve the matter within a few months.

68. Defendant Attorney Jeff Griffith had full knowledge that Mrs. Heffington had health problems including a heart condition, and his actions had already caused a former client to have a heart attack and later die. At one of G.H.'s 504 meetings with the school, their intended stress caused Mrs. Heffington's heart condition to worsen. After this, she could not attend any 504 meetings for health reasons.

69. For a long time, Mrs. Heffington was not aware that defendant Attorney Jeff Griffith legally represented the Derby school system. Even when she found out, she didn't want to believe that he and his law office were conspiring with them to cause her health problems to worsen, since they had been friends in high school and college.

70. Defendant Attorney Jeff Griffith and his law office refused to resolve this case with Mrs. Heffington without any regard for her health or that of her son, G.H. They had dragged out a previous suit she filed against Derby USD 260 in 2007 (Case No. 07-4095-SAC) for denying G.H. his rights under

9.

Section 504 of the Rehabilitation Act of 1973.

71. Mrs. Heffington was later forced to withdraw the above case after Mr. Griffith conspired with the school system and others to overwhelm her with burdensome and unnecessary paperwork. It was dismissed in 2008; however, new violations of Section 504 have transpired since then and plaintiff is filing for these violations.

72. Prior to filing this suit, plaintiff made repeated attempts both verbally and by e-mail to try and fairly settle this matter with defendants Supt. Craig Wilford and Attorney Jeff Griffith. They refused.

73. On April 20, 2011, Attorney Jeff Griffith told Mrs. Heffington to "go ahead and file suit" in this matter. He wanted to make money off of the school system and even though they are broke, their insurance will cover legal fees for Jeff Griffith and Griffith & Griffith in this matter.

74. Defendant Attorney Jeff Griffith and his law office are fully aware that lawsuits are posted on the A.H.A!'s website and viewed by many. However, money is more important and they would rather risk their client's reputation.

75. America is in decline because the only way to rid our school system and legal system of arrogant teachers, administrators and lawyers is to file lawsuits. A true Christian nation would work their issues out.

76. By unfairly eliminating G. H. from marching band because of his Asperger's Syndrome and failing to give him proper assistance under his 504-plan, the defendants violated the Americans with Disabililties Act [ADA] of 1990, a supplement to Title VII of the Civil Rights Act of 1964, and Section 504 of the Rehabilitation Act of 1973, and caused intentional infliction of emotional distress to plaintiffs.

## E. LAW AND ANALYSIS

The defendants in this matter violated laws, statutes, ordinances and regulations, including but not limited to: the Americans with Disabilities Act [ADA] of 1990, a supplement to Title VII of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973 (hereinafter called "Section 504") denying G.H.'s guaranteed right to a free appropriate education under the law (Section 504/IDEA), civil conspiracy/collusion and intentional infliction of emotional distress/tort of outrage. The federal claims in

this matter apply to defendants Derby Unified School District (USD) 260, Supt. Craig Wilford and band instructor Adam DeVault. The state claims in this matter apply to all of the defendants.

Federally, the defendants' acts and failures to act discriminated against plaintiff's son, G.H., and denied him his right to play trombone in high school marching band, because he had a mild case of Asperger's Syndrome resulting in a processing disorder. Their refusal to revise G.H.'s 504-plan and offer additional assistance to help him pass his classes, especially in math, denied him his rights under Section 504 of the Rehabilitation Act of 1973 and the right to a free and appropriate education. The discrimination and violation of rights caused emotional distress to G.H., including feelings of inadequacy, loss of self-esteem and depression. The defendants conspired to continue to cause further emotional distress to G.H. and his mother, plaintiff Joan Heffington, by refusing to settle this matter, even knowing that her health had already suffered severely from having to represent herself and her family in past cases (legal abuse) and that Mr. Heffington had died of a sudden heart attack caused by the same. There has been a pattern of discrimination and a procedural history which has intensified to retaliate against Mrs. Heffington for operating the Association for Honest Attorneys (A.H.A!)

Plaintiff had tried to resolve this dispute by filing a complaint with the Office of Civil Rights (OCR) in October, 2009; however, it was dismissed. She timely filed an appeal, but even after repeated contacts, the OCR has still failed to respond and are well beyond the six month time frame required for doing so. Even though the Kansas State Attorney General is authorized under ADA to institute suits to protect Constitutional rights of citizens in public education, they have failed to do so in this case. All administrative remedies have been exhausted, and plaintiffs are justified in alleging each of the following claims against the defendants before the two-year statute of limitations is up.

## CAUSES OF ACTION

### 1. Discrimination under the Americans With Disabilities Act [ADA] of 1990, A Supplement to Title VII of the Civil Rights Act of 1964

77.   Plaintiffs incorporate by reference paragraphs 1 through 76 of this Petition.

78.  The defendants' conduct in agreeing to participate in a plan to conspire and collude to cut GH from band constitutes discrimination under the Americans with Disabilities Act of 1990, a supplement of Title VII of the Civil Rights Act of 1964.

79.  The conduct of the above named defendants in agreeing with defendants Attorney Jeff Griffith and Griffith & Griffith to participate in a plan to discriminate against G. H. and cause emotional distress to him and his mother constitutes discrimination under the Americans With Disabilities Act of 1990.

80.  By participating in the plan to discriminate against G.H., the defendants acted with the intent of violating the Americans With Disabilities Act of 1990, a supplement to Title VII of the Civil Rights Act of 1964, having full knowledge that such acts, or failures to act, would result in injury to the plaintiffs. The resulting injury was serious and substantial.

81.  The conduct of the defendants constitutes discrimination under the Americans with Disabilities Act of 1990, a supplement to Title VII of the Civil Rights Act of 1964.

82.  As a result of the above named defendants' discrimination, plaintiffs have been damaged in excess of $75,000.00.

WHEREFORE, plaintiffs respectfully request a judgment of the court against the above named defendants awarding to plaintiffs (i) damages in excess of $75,000.00; (ii) pre- and post-judgment interest; (iii) costs, including reasonable attorney fees, for this action; (iv) injunctive relief enjoining the defendants from continuing their harm; and (v) any other relief deemed just and equitable by the court.

### 2.  Section 504 of the Rehabilitation Act of 1973

83.  Plaintiffs incorporate by reference paragraphs 1 through 82 of this Petition.

84.  The conduct of the defendants in communicating, corresponding and meeting together to deny G. H. reasonable and necessary accommodations under Section 504 of the Rehabilitation Act of 1973 after plaintiff's previous case (07-4095-SAC) was dismissed constitutes a violation of the same.

85.  The conduct of the defendants in communicating, corresponding and meeting together to try and convince Mrs. Heffington that G. H. was being given an appropriate and/or suitable education, failing

to give him the extra help he needed, allowing him to flunk Algebra three years in a row, and their deliberate failure to modify his 504-plan to include extra assistance constitutes a violation of Section 504 of the Rehabilitation Act of 1973.

86. By participating in the above communications, correspondence and meetings and refusing to provide extra assistance and modify G. H.'s 504 plan to help him succeed, the defendants acted with the intent to deny G. H. his rights under Section 504 and his right to a free appropriate education, having full knowledge that such acts were substantially certain to result in injury and detriment to the plaintiffs.

87. The conduct of the defendants constitutes a violation of Section 504 of the Rehabilitation Act of 1973 and a denial of G. H.'s right to a free appropriate and/or suitable education.

88. As a result of the defendant's aforementioned violations, plaintiffs have been damaged in excess of $75,000.00.

WHEREFORE, plaintiffs respectfully request a judgment of the court against the above named defendants awarding to plaintiffs (i) damages in excess of $75,000.00; (ii) pre- and post-judgment interest; (iii) costs, including reasonable attorney fees, for this action; (iv) injunctive relief enjoining the defendants from continuing their harm; and (v) any other relief deemed just and equitable by the court.

### 3. Conspiracy/Collusion

89. Plaintiffs incorporate by reference paragraphs 1 through 88 of this Petition.

90. The conduct of the defendants in communicating, corresponding and meeting together to deny G.H. his right to a free appropriate and/or suitable education, failing to give him the extra help he needed, allowing him to flunk Algebra three years in a row, and their deliberate failure to modify his 504-plan to offer additional assistance (i.e., labs, during tests) under Section 504 constitutes civil conspiracy/collusion.

91. The above defendants' conduct in agreeing to participate in a plan to conspire and collude to cause plaintiffs severe emotional distress and bodily harm or injury constitutes civil conspiracy/collusion.

92. The conduct of the above named defendants in agreeing with defendants Attorney Jeff Griffith and Griffith & Griffith and/or others involved in her previous litigation to participate in a plan to cause

13.

severe emotional distress and bodily harm or injury to plaintiffs constitutes civil conspiracy/collusion.

93. The defendants' participation in a plan to conspire to cause plaintiffs severe emotional distress, bodily harm and/or death was with full knowledge that such acts, and failures to act, were substantially certain to result in injury and detriment to plaintiffs.

94. By participating in the plan, the defendants acted with the intent of committing civil conspiracy and collusion, having full knowledge that such acts, or failures to act, would result in injury to plaintiffs. The resulting injury was serious and substantial.

95. The conduct of the defendants constitutes civil conspiracy/collusion.

96. As a result of the above named defendants' civil conspiracy/collusion, plaintiffs have been damaged in excess of $75,000.00.

WHEREFORE, plaintiffs respectfully request a judgment of the court against the above named defendants awarding to plaintiffs (i) damages in excess of $75,000.00; (ii) pre- and post-judgment interest; (iii) costs, including reasonable attorney fees, for this action; (iv) injunctive relief enjoining the defendants from continuing their harm; and (v) any other relief deemed just and equitable by the court.

## Intentional Infliction of Emotional Distress/Tort of Outrage

97. Plaintiffs incorporate by reference paragraphs 1 through 96 of this Complaint.

98. The conduct of all of the defendants in participating in a plan to deny G.H. his rights and to cause plaintiffs severe emotional distress and/or injury was extreme and outrageous.

99. The conduct of the defendants to deny G.H. his rights to cause him distress, to demean his abilities, to lower his self-esteem, and to cause him to hate going to school constitutes an intentional infliction of emotional distress.

100. The conduct of defendant Mr. DeVault to unwillingly accommodate G.H. under his 504-plan, set up tryouts for marching band unnecessarily, and then intentionally eliminate G.H. even though his performance was flawless, represents discrimination and a knowing misrepresentation of the truth to cause

14.

intentional infliction of emotional distress to the plaintiffs.

101.  The conduct of the defendants to deny G.H. his rights and to drag this matter out unnecessarily, all the while knowing that Mrs. Heffington had become a widow, was incurring health problems and trying to care for three children, constitutes intentional infliction of emotional distress.

102.  At all relevant times, the defendants' participation in the conspiracy to deny G.H. proper assistance under his 504-plan, discriminate against him and retaliate against Mrs. Heffington and her children because she operated the A.H.A! was willful, and with full knowledge that their conduct was substantially certain to result in injury and severe emotional distress to plaintiffs.

103.  The past conduct of defendants Derby USD 260, Supt. Craig Wilford, Attorney Jeff Griffith and Griffith & Griffith to quiet the false charges brought against Mrs. Heffington's older son for his heroic efforts, allow a Derby USD 260 teacher to intentionally strike her younger son in the head and do nothing about it, arrest him in a separate incident without good cause, and continually bully G. H. and deny him his rights constitutes intentional infliction of emotional distress, was willful and malicious, and with full knowledge that such conduct was substantially certain to result in injury and severe emotional distress to Mrs. Heffington and her sons, including G.H.

104.  Plaintiff suffered severe emotional distress and increased bodily harm/injury as a result of the defendants' acts and failures to act, including, but not limited to:  depression, anxiety attacks, heart trouble, digestive problems, back and neck pain, paranoia, neurodermatitis and osteoarthritis.  G.H. suffered the loss of self-esteem, loss of friendships, lack of motivation, insomnia, depression and feelings of inadequacy.

105.  By participating in a conspiracy to cause intentional infliction of emotional distress and bodily harm or injury to plaintiffs, the defendants' conduct was grossly disproportionate under such circumstances and must have been inspired by malice, so as to amount to abuse of power that shocks the conscience of a reasonable person.

106.  The conduct of the defendants was so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

15.

society. Plaintiff has recited the facts in this matter to the average person which caused resentment toward defendants and lead them to exclaim: "Outrageous!"

107. The conduct of the defendants in this matter to cause plaintiffs severe emotional distress constitutes intentional infliction of emotional distress/bodily harm and liability to plaintiffs for their injuries.

108. As a result of the outrageous conduct and intentional infliction of emotional distress by the defendants, plaintiffs have been damaged in excess of $250,000.00.

WHEREFORE, plaintiffs respectfully request judgments of the court against all of the defendants awarding to plaintiffs (i) damages in excess of $250,000.00 for each defendant; (ii) pre- and post-judgment interest; (iii) costs, including reasonable attorney fees, for this action; (iv) injunctive relief enjoining all defendants from continuing the intentional infliction of emotional distress; and (v) any other relief deemed just and equitable by the court.

Respectfully submitted,

By: _____

Joan Heffington, Individually, pro se
and On Behalf of Minor Son, G.H.
7145 Blueberry Lane
Derby, Kansas  67037
Ph: (316) 788-0901
Fx: (316) 788-7990


## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests that the issues in this matter be heard by a jury.

Respectfully submitted,

By: _____

Joan Heffington, Individually, *pro se*
and On Behalf of Minor Son, G. H.
7145 Blueberry Lane
Derby, Kansas  67037
Ph: (316) 788-0901
Fx: (316) 788-7990

DESIGNATION OF TRIAL

Plaintiff designates Kansas City, Kansas as the location for the trial in this matter.

Respectfully submitted,

By: _Joan Heff_

Joan Heffington, Individually, *pro se*
  and On Behalf of Minor Son, G. H.
7145 Blueberry Lane
Derby, Kansas  67037
Ph:  (316) 788-0901
Fx:  (316) 788-7990

CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of May, 2011, a copy of the above and foregoing Complaint and Summonses were filed with the U. S. District Court for the District of Kansas, and a copy was sent certified, return receipt and  properly addressed, to:

Derby Unified School District 260
Attn:  Vicki Frazier
120 E. Washington
Derby, Kansas  67037

Supt. Craig Wilford
Derby Unified School District 260
120 E. Washington
Derby, Kansas  67037

Adam DeVault
Derby Senior High School
920 N. Rock Road
Derby, Kansas  67037

Jeff Griffith, Attorney at Law
Griffith & Griffith
111 N. Baltimore
Derby, Kansas  67037

Griffith & Griffith
Attn:  William Griffith/Jeff Griffith
111 N. Baltimore
Derby, Kansas  67037

_Joan Heff_

Joan Heffington, Individually, *pro se*
  and on Behalf of Minor Son, G.H.
7145 Blueberry Lane
Derby, Kansas  67037
Ph:  316-788-0901
Fx:  316-788-7990

17.